UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFERY JOHNSON,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>ACCENTURE LLP, AN ILLINOIS LIMITED PARTNERSHIP.<br><br>　　　　　　　Defendants. | No. |

**COMPLAINT AND JURY DEMAND**

Plaintiff Jeffery Johnson complains against Defendant Accenture, LLP. ("Accenture" or "Defendant") as follows:

1. This is an action for employment discrimination on account of race, interference with rights, and retaliation in violation of 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.*, arising out of the circumstances leading up to and including the termination of Plaintiff's employment relationship with Defendant.

**PARTIES**

2. Plaintiff Jeffery Johnson (hereinafter "Plaintiff" or "Mr. Johnson") resides in the City of Aurora, which is within DuPage, Kane, Kendall, and Will counties in State of Illinois within the Northern District of Illinois.

3. Defendant Accenture, Inc. is a Delaware Corporation and maintains offices and conducts business at 161 N. Clark Street, Chicago, Illinois 60601, among other locations within the Northern District of Illinois.

4. Plaintiff was at all relevant times employed by Accenture as an Application Development Associate Manager until his employment was terminated on and effective, November 15, 2019.

## JURISDICTION AND VENUE

5. The amount in controversy exceeds $75,000 exclusive of interest and costs.

6. On July 16, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting that Defendant engaged in discrimination against him on account of his race, interfered with his rights, and retaliated against him because of his opposition to and complaints about a racially hostile and discriminatory work environment and consulting assignment in violation of Title VII.

7. Plaintiff's Charge of Discrimination was filed within the 300-day period after November 15, 2019, when Defendant terminated his employment.

8. On March 19, 2021, the EEOC mailed Notice of Suit Rights to Plaintiff with respect to the above referenced Charge of Discrimination, which was received by Plaintiff on March 26, 2021, and Plaintiff is filing this complaint for disparate treatment discrimination and interference against him on account of his race in violation of the Title VII and retaliation against him in violation of Title VII within the requisite 90-day period after he received the notice.

9. This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C.§1343 (civil rights); and 42 U.S.C. §§ 2000e, *et seq* (violation of Title VII).

10. This Court has personal jurisdiction over Accenture because it maintains offices and facilities and engages in regular and systematic business and other activities within the

Northern District of Illinois and some of the acts attributed to Accenture that give rise to Plaintiff's claims occurred within the Northern District of Illinois.

11. Venue is proper in this district court pursuant 28 U.S.C. §1391(b) and (c) because Plaintiff resides and Defendant is located within the Northern District of Illinois and some of the events that give rise to Plaintiffs' claims occurred within the Northern District of Illinois.

12. Venue also is convenient in this judicial district.

## BACKGROUND FACTS

13. Mr. Johnson is an African male who was born on April 26, 1966.

14. Mr. Johnson was hired by Accenture on January 10, 2018, as a Level 8 Consultant who provided software engineering services to Accenture clients.

15. Mr. Johnson was well qualified for and excelled in this role as evinced by his performance evaluations.

16. Despite this, Mr. Johnson was terminated from his Accenture employment, effective November 15, 2019, ostensibly because he was unable to obtain new Accenture consulting assignments after March, 2019, when Accenture removed him from a consulting assignment at Dana Holdings ("Dana") in Novi, Michigan.

17. Mr. Johnson was removed from the Dana consulting assignment because of his race and because of complaints he made to Accenture Human Resources and other representatives about discrimination on account of race and racial preferences and stereotyping that he experienced while he provided services at Dana.

18. In this regard, on the first day of Mr. Johnson's Dana consulting assignment during the first week of March, 2019, he was introduced to Ms. Lauren D. Fisher, an African American

female Accenture consultant whom he was to replace, and he attended an initial meeting concerning the assignment.

19. Those initially in attendance at the meeting included: two Dana representatives, both of whom are Caucasian and apparently of German national origin; Ms. Andrea Polis, who is Caucasian and was supposed to have functioned as Mr. Johnson's administrative assistant for the duration of the consulting assignment; Mr. Johnson; and Ms. Fisher, the woman he was replacing.

20. After approximately twenty minutes to a half hour had elapsed, Mr. David Powers, an Accenture Client Delivery and Operations Manager, removed Ms. Polis as Mr. Johnson's administrative assistant because of his race and he directed Mr. Johnson to leave the meeting and accompany him to another room.

21. Mr. Powers then told Mr. Johnson what was expected of him.

22. Mr. Powers said, "You know why you're here right?" "You're here because Dana believed Lauren [Fisher] was inadequate, they didn't like her and they didn't think she was smart enough for the position."

23. Mr. Johnson was alarmed by the remark and it made him feel very uncomfortable because it was evident that Ms. Fisher had been stereotyped by the Dana representatives because of her race.

24. Mr. Johnson made a telephone call to the Accenture Human Resources representative who had been assisting him with his efforts to procure Accenture assignments and he told her about his conversation with Mr. Powers and Mr. Powers' apparent acquiescence to the Dana representatives' demand that Ms. Fisher be removed from the Dana consulting assignment because of their racial preferences and stereotyping.

4

25. After Ms. Fisher was removed from the Dana assignment, Mr. Johnson was the only African American consultant assigned to the Dana project.

26. The Dana representatives then began to treat Mr. Johnson in a very discriminatory, demeaning, and disrespectful manner because of his race.

27. On March 14, 2019, Mr. Johnson told Rick Noble, an Accenture Client Delivery and Operations Senior Manager, about the discriminatory, demeaning, and disrespectful treatment based on his race to which he also had been subjected by the Dana representatives.

28. Mr. Johnson asked Mr. Noble, "Should I just go to another project?"

29. Mr. Noble replied, "No please stay. We love what you do here."

30. Mr. Noble then said, "But I'm going to be honest with you. The Germans feel threatened by you. They love the material you present in meetings, but your voice is too deep. It makes them feel uncomfortable. You should try raising it an octave or two. They are offended by the current octave of your voice."

31. Mr. Johnson was offended by what he perceived to be Mr. Noble's continuing acquiescence to the Dana representatives' racial preferences and stereotyping.

32. Mr. Johnson responded, "Are you serious? Are you seriously asking me to do this?" Mr. Noble said, "Yeah, let's just humor the Germans."

33. On Monday, March 18, 2019, Mr. Johnson made a formal complaint to Accenture Human Resources about the discriminatory, demeaning, and disrespectful treatment based on his race to which he had been subjected by the Dana representatives and Messrs. Powers and Noble's acquiescence to the Dana representatives' racial preferences and stereotyping.

34. Mr. Johnson was then removed from the Dana consulting assignment because of his race, in retaliation for his opposition to and complaints about the racially hostile and discriminatory work environment at the Dana consulting assignment, and his opposition to and complaints about Messrs. Powers and Noble's acquiescence to the Dana representatives' racial preferences and stereotyping.

35. Mr. Johnson was then told to seek different consulting assignments because of his race, in retaliation for his opposition to and complaints about the racially hostile and discriminatory work environment at the Dana consulting assignment, and his opposition to and complaints about Messrs. Powers and Noble's acquiescence to the Dana representatives' racial preferences and stereotyping.

36. Mr. Johnson thereafter received no assistance in identifying new assignments and was not selected for Accenture consulting assignments because of his race, in retaliation for his opposition to and complaints about the racially hostile and discriminatory work environment at the Dana consulting assignment, and his opposition to and complaints about Messrs. Powers and Noble's acquiescence to the Dana representatives' racial preferences and stereotyping.

37. Mr. Johnson was terminated from his Accenture employment, effective November 15, 2019, ostensibly because he was unable to obtain Accenture consulting assignments after July, 2019.

38. Mr. Johnson actually was terminated from his Accenture employment because of his race, in retaliation for his opposition to and complaints about the racially hostile and discriminatory work environment at the Dana consulting assignment, and his opposition to and complaints about Messrs. Powers and Noble's acquiescence to the Dana representatives' racial preferences and stereotyping.

39. Defendants' purported reasons for the failure to select Mr. Johnson for Accenture consulting assignments and the termination of his employment are not true and are pretexts for discrimination against him because of his race, retaliation against him for his opposition to and complaints about the racially hostile and discriminatory work environment at the Dana consulting assignment, and retaliation against him because of his opposition to and complaints about Messrs. Powers and Noble's acquiescence to the Dana representatives' racial preferences and stereotyping.

## COUNT I
*Discrimination and Interference Based on Race in Violation of 42 U.S.C. § 1981*

40. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if reiterated paragraph by paragraph.

41. At all times relevant, Plaintiff was an employee and Defendant was his employer covered by and within the meaning of 42 U.S.C. § 1981.

42. At all times relevant, Plaintiff had the same right to make and enforce his express or implied employment agreement with Defendant and to enjoyment of all benefits, privileges, terms, and conditions of his contractual and employment relationship with Defendant as is enjoyed by white citizens of the U.S.

43. Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff on account of his race and depriving Plaintiff of his rights under 42 U.S.C. §1981 to enforce his express or implied employment agreement with Defendant.

44. Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff on

account of his race and depriving Plaintiff of his rights under 42 U.S.C. §1981 to enforce his express or implied employment agreement with Defendant when they removed him from the Dana consulting assignment, did not select Plaintiff for another Accenture consulting assignment, and terminated his employment.

45. The discriminatory practices at issue were intentional and willful and were committed with malice or with reckless indifference to Plaintiff's rights and sensibilities because he is not a white citizen of the U.S.

46. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has sustained damages, including, but not limited to, loss of past, present and future salary, bonuses, incentive compensation, and earning capacity; loss of the value retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

## COUNT II
*Retaliation and Interference in Violation of 42 U.S.C. § 1981*

47. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if reiterated paragraph by paragraph.

48. At all times relevant, Plaintiff was an employee and Defendant was his employer covered by and within the meaning of 42 U.S.C. § 1981.

49. At all times relevant, Plaintiff had the same right to make and enforce his express or implied employment agreement with Defendant and to enjoyment of all benefits, privileges, terms, and conditions of his contractual and employment relationship with Defendant as is enjoyed by white citizens of the U.S. and free from retaliation, discrimination or interference because he opposed a violation of 42 U.S.C. § 1981.

50. Plaintiff opposed a violation of 42 U.S.C. § 1981 when he asserted his opposition to and complained about the racially hostile and discriminatory work environment at the Dana consulting assignment and about Messrs. Powers and Noble's acquiescence to the Dana representatives' racial preferences and stereotyping.

51. Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of retaliating against Plaintiff because of his opposition to and complaints about the racially hostile and discriminatory work environment at the Dana consulting assignment and about Messrs. Powers and Noble's acquiescence to the Dana representatives' racial preferences and stereotyping and to interfere with and deprive Plaintiff of his rights under 42 U.S.C. §1981 to enforce his express or implied employment agreement with Defendant when they removed him from the Dana consulting assignment, did not select Plaintiff for another Accenture consulting assignment, and terminated his employment.

52. The retaliatory and interfering practices at issue were intentional and willful and were committed with malice or with reckless indifference to Plaintiff's rights and sensibilities because he is not a white citizen of the U.S.

53. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has sustained damages, including, but not limited to, loss of past, present and future salary, bonuses, incentive compensation, and earning capacity; loss of the value retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

**COUNT III**
*Race Discrimination and Interference in Violation of Title VII*

54. Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

55. At all times relevant, Plaintiff was an employee covered by and within the meaning of 42 U.S.C. §§ 2000e(f) and Defendant was his employer covered by and within the meaning of 42 U.S.C. §2000e (b).

56. At all times relevant, Defendant was a "person" as this term is defined by 42 U.S.C. §2000e (a) and Defendant's representatives were agents of Defendant with respect to the terms and conditions of and the termination of Plaintiff's former employment.

57. At all times relevant herein, under Title VII and 42 U.S.C. § 2000e-2(a), Plaintiff had a right to employment with Defendant free from discrimination against him and interference with his rights based on his race.

58. Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of discriminating against Plaintiff on account of his race and depriving Plaintiff of his rights under Title VII when they removed him from the Dana consulting assignment, did not select Plaintiff for another Accenture consulting assignment, and terminated his employment.

59. The discriminatory practices at issue were intentional and willful and were committed with malice or with reckless indifference to Plaintiff's rights and sensibilities.

60. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has sustained damages, including, but not limited to, loss of past, present and future salary, bonuses, incentive compensation, and earning capacity; loss of the value retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and

embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

## COUNT IV

### *Retaliation and Interference in Violation of TITLE VII*

61. Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

62. At all times relevant, Plaintiff was an employee covered by and within the meaning of 42 U.S.C. §§ 2000e(f) and Defendant was his employer covered by and within the meaning of 42 U.S.C. §2000e (b).

63. At all times relevant, Defendant was a "person" as this term is defined by 42 U.S.C. §2000e (a) and Defendant's representatives were agents of Defendant with respect to the terms and conditions of and the termination of Plaintiff's former employment.

64. At all times relevant herein, under Title VII and 42 U.S.C. § 2000e-3(a), Plaintiff had a right to employment with Defendant free from retaliation, discrimination or interference because he opposed a violation of Title VII.

65. Plaintiff opposed a violation of Title VII when he asserted his opposition to and complained about the racially hostile and discriminatory work environment at the Dana consulting assignment and about Messrs. Powers and Noble's acquiescence to the Dana representatives' racial preferences and stereotyping.

66. Defendant through its representatives illegally, maliciously, and wrongfully conspired with each other with the intent to and for the illegal purpose of retaliating against Plaintiff because of his opposition to and complaints about the racially hostile and discriminatory work environment at the Dana consulting assignment and about Messrs. Powers and Noble's

acquiescence to the Dana representatives' racial preferences and stereotyping and to interfere with and deprive Plaintiff of his rights under Title VII when they removed him from the Dana consulting assignment, did not select Plaintiff for another Accenture consulting assignment, and terminated his employment.

67. The retaliatory and interfering practices at issue were intentional and willful and were committed with malice or with reckless indifference to Plaintiff's rights and sensibilities because he is not a white citizen of the U.S.

68. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has sustained damages, including, but not limited to, loss of past, present and future salary, bonuses, incentive compensation, and earning capacity; loss of the value retirement, health care, 401(k), and other benefits; mental and emotional distress, anguish, and anxiety, humiliation and embarrassment; loss of the enjoyment of the ordinary pleasures of everyday life; and loss of the ability to pursue gainful employment of choice.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff Jeffery Johnson respectfully requests that this Honorable Court grant the following remedies:

    a.    Declare that the aforementioned practices and actions of Defendants are unlawful;

    b.    Declare that Defendant's acts and practices outlined above are in violation of 42 U.S.C. §1981 and Title VII;

    c.    Enjoin and permanently restrain these practices;

    d.    Direct Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

e. Award Plaintiff all lost past, present and future salary, bonuses, and incentive compensation, and benefits to which he had been entitled or should have been entitled as an Accenture employee and the value of all lost past, present and future employee healthcare, retirement, 401(K), and other benefits to which he had been entitled as an Accenture employee;

f. Award Plaintiff compensatory and punitive damages for Defendants' violations of 42 U.S.C. §1981 and Title VII;

g. Award Plaintiff compensatory damages for mental anguish, emotional distress, humiliation and injury to his reputation;

h. Award Plaintiff punitive and/or exemplary damages;

i. Award Plaintiff's reasonable attorney fees and costs, including expert witness fees; and

j. Grant such other legal or equitable relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted,

By: /s/ Justin DeLuca

Justin DeLuca
John C. Ellis
**ELLIS LEGAL P.C.**
200 West Madison Street, Suite 2670
Chicago, Illinois 60606
(312) 967-7629